UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JUAN JIMINEZ-SANTANA[1], )
 )
       Petitioner, )
 ) No. 1:03-CV-23/1:00-CR-145
v. )
 ) Collier/Lee
UNITED STATES OF AMERICA, )
 )
       Respondent. )

## REPORT AND RECOMMENDATION

This matter is before the Court on a motion filed by Juan Jiminez-Santana ("Petitioner") to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 1). As relevant here, Petitioner alleges he was denied his right to a direct appeal allegedly because his counsel rendered ineffective assistance by not filing a direct appeal. Petitioner alleges he asked his counsel to file an appeal because of alleged inaccuracies in the presentence investigation report ("PSR"). The resolution of disputed factual issues relating to Petitioner's claim of ineffective assistance of counsel due to his counsel's alleged failure to file a direct appeal was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) (Court File No. 12). On May 18, 2005 the Court appointed counsel to represent Petitioner in the evidentiary hearing (Court File No. 13). On June 22, 2005, the Court held an evidentiary hearing and heard argument regarding the referred issues. Subsequently, on June 23, 2005, Petitioner submitted a memorandum

---

[1] Although Petitioner spelled his name on his petition "Jimenez-Santana," it appeared during his underlying criminal proceedings that "Jiminez-Santana" is the correct spelling of his name. (*See* Criminal Docket No. 1:00-CR-145, Court File No. 98).

regarding evidentiary issues raised during the hearing (Court File No. 18).

After reviewing the evidence and argument of counsel, I find Petitioner has demonstrated he received ineffective assistance of counsel, and I **RECOMMEND** that the portion of his § 2255 motion dealing with the issue of ineffective assistance of counsel due to a failure to file a direct appeal be **GRANTED**.

## I. FACTS

At the evidentiary hearing, Petitioner, whose native language is Spanish, testified on his own behalf with the assistance of an interpreter. Petitioner testified that he was represented by Harry K. Hays, his appointed counsel, at all stages of the underlying criminal proceedings. Since Petitioner was not proficient in English, an interpreter was provided for the court proceedings in the underlying criminal case.

Petitioner arrived in the United States from Mexico in June 2000.[2] Petitioner was arrested in November 2000, and he subsequently entered a guilty plea to drug-related charges and was sentenced in December 2001 (*See* Criminal Docket No. 1:00-CR-145). Petitioner testified that during the criminal proceedings for the underlying charges he met with Mr. Hays four times, and in three of the meetings Mr. Hays brought an interpreter with him. During the post-sentencing meeting regarding a direct appeal Mr. Hays did not use the services of an interpreter. Petitioner testified that he has been studying English in prison and now understands it better than he did at the time of his representation by Mr. Hays. However, Petitioner testified that, at the time he requested that Mr. Hays file a direct appeal, Petitioner did not understand or speak English to any significant

---

[2] Petitioner had been in the country at least one other time in the 1980s as shown by a prior arrest.

degree and Mr. Hays did not speak Spanish.

It is undisputed that Petitioner did not file a direct appeal concerning his conviction or sentence. Petitioner requests that his failure to raise any of his claims in a direct appeal be excused because he requested that Mr. Hays file such an appeal, and, unbeknownst to Petitioner, Mr. Hayes failed to do so. Petitioner admitted that he pleaded guilty because he was guilty, but he also testified that he asked Mr. Hays to file an appeal because he believes he received a "wrong" sentence due to inaccurate information contained in the PSR.

Petitioner apparently communicated well enough with Mr. Hays at some point to understand that Mr. Hays did not think Petitioner should file an appeal. Petitioner testified he knew Mr. Hays believed Petitioner had no viable issue for appeal and had been sentenced at the bottom of the guideline range. Petitioner, however, testified he still requested an appeal and thought Mr. Hays was going to file an appeal because Petitioner asked him to do so.

In support of his allegation of ineffective assistance of counsel, Petitioner submitted two documents that were made exhibits at the hearing. Both documents bear the caption of the underlying criminal case and are stamped "CLIENT COPY," but neither is signed by Petitioner nor date-stamped as "FILED" with any court. One document is entitled "MOTION," and it appears to be a *pro se* motion to appoint new counsel to represent Petitioner in his appeal (Court File No. 20, pt. 3, Petitioner's Exh. #2). That motion states Mr. Hays "advised Defendant that he found no grounds for appeal as the Defendant had received the minimum sentence provided within the guidelines for the offenses the Defendant plead to." (*Id.* ¶ 2). The motion also states that Petitioner "does not fluently speak or understand the standard language within the Courts and would need assistance of counsel to pursue his appeal." (*Id.* ¶ 3). The other document is entitled "NOTICE OF

APPEAL," and it also indicates Petitioner is acting *pro se* (Court File No. 20, pt. 2, Petitioner's Exh. #1) (Petitioner's Exhs. #1 and #2 will be referred to collectively as the "*pro se* documents").

Petitioner testified that when Mr. Hays presented the *pro se* documents to him during a meeting held sometime after sentencing occurred, Mr. Hays did not have an interpreter present. During the meeting, Mr. Hays had Petitioner sign some papers, which apparently included copies of the *pro se* documents. Petitioner also received envelopes with stamps on them from Mr. Hays, but Petitioner did not understand what he was supposed to do with the stamped envelopes and does not remember to where the envelopes were addressed. Petitioner thought that the documents, and his communication with Mr. Hays requesting an appeal, meant that Mr. Hays was filing an appeal. Petitioner testified that Mr. Hays never communicated that he was not filing the requested appeal, or that Petitioner should file the appeal *pro se*. Petitioner testified he did not understand the meaning of the *pro se* documents because he could not read English and no interpretation of the documents was provided.

Petitioner sent the *pro se* documents to his family in Indiana because he had been told by a fellow inmate that he could not transport such documents to prison. Sometime after he arrived at prison, described only as months later, he obtained the *pro se* documents from his family and eventually showed them to a fellow inmate who interpreted them for him. This was the first time Petitioner heard that he was supposed to do something to file an appeal. Up until this point, Petitioner thought Mr. Hays had filed an appeal on his behalf. Petitioner never understood that Mr. Hays told him he had ten days to appeal *pro se* or to seek other counsel to represent him on an appeal.

Counsel for Petitioner represented, and the Government did not dispute, that: 1) Mr. Hays

4

died sometime after Petitioner was sentenced; 2) after Mr. Hays died, his files were divided among various attorneys; 3) no file concerning Mr. Hays's representation of Petitioner could be located by the various attorneys who received Mr. Hays's files when recently requested by Petitioner's current counsel; and 4) no record of any request for fees for interpreter services rendered concerning a post-sentencing discussion of an appeal could be located by Petitioner's current counsel.

In response to Petitioner's claims, the Government submitted with its brief and again at the hearing an affidavit obtained from Mr. Hays[3] (Court File No. 20, pt. 4, Government Exh. #1, Affidavit of Harry K. Hays). In his affidavit, Mr. Hays averred that Petitioner did not instruct him to file a direct appeal. Mr. Hays also averred that Petitioner and he "discussed the possibility of filing a direct appeal. I advised Juan Jiminez-Santana not to appeal his conviction and sentence due to a lack of any legally viable issues and he was at the bottom of the guidelines. Juan Jiminez-Santana did not thereafter direct me to file an appeal with the Sixth Circuit Court of Appeals." (*Id.*). In explanation of the *pro se* documents, Mr. Hays averred, "I had prepared documents for him to file if he chose to change his mind or wanted other counsel. He knew he had only 10 days to file." (*Id.*).

## II. ANALYSIS

Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battle*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). "To prevail under 28 U.S.C. § 2255, a [petitioner] must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United*

---

[3] As Mr. Hays is now deceased, his affidavit is the only evidence available concerning Mr. Hays's recollection of the events.

5

*States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

The defect Petitioner alleges is a denial of effective assistance of counsel to prosecute the direct appeal of his sentence. The Sixth Amendment provides criminal defendants with the right to reasonably effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove an ineffective assistance of counsel claim, a petitioner usually must show (1) counsel's deficient representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced petitioner's defense. *Strickland*, 466 U.S. at 687-88.

A lawyer's "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment," without regard to the probability of success on the appeal. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit."). However, a failure to file an appeal when a defendant has not specifically requested one does not necessarily constitute ineffective assistance of counsel: "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

If the Hays affidavit is admissible, Petitioner and his counsel are in conflict about whether Petitioner actually requested Mr. Hays to file an appeal because Petitioner states he did so and Mr. Hays averred he did not. At the hearing, the Court took under advisement the issue of the admissibility of Mr. Hays's affidavit. With regard to admissibility of the affidavit, Petitioner argues that, while Rule 7(b) of the Rules Governing Section 2255 Proceedings for the United States District

Courts permits a court to allow the parties to expand the record by the use of affidavits and other types of materials not necessarily admissible under the Rules of Evidence under certain circumstances, Federal Rule of Evidence 1101(d) and (e) provide that the Rules of Evidence apply to § 2255 evidentiary hearings. Thus, Petitioner argues that the affidavit is inadmissable hearsay under the Rules of Evidence. Petitioner also objects to the admission of the affidavit under the Sixth Amendment to the United States Constitution because out-of-court testimonial statements cannot be admitted at trial against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine the declarant regarding the statements. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The Government concedes that its purpose in introducing Mr. Hays's affidavit is to establish the truth of the matters asserted therein and that the affidavit is testimonial. No authority was presented by the either party regarding whether *Crawford* applies in the context of a post-conviction § 2255 evidentiary hearing.

While issues concerning the admissibility of the affidavit could be important considerations under other circumstances, it is not necessary to resolve the issue of the admissibility of the affidavit to decide this matter. Even if the affidavit were admissible, the affidavit does not address whether Petitioner and Mr. Hays effectively communicated about direct appeal issues given the language barrier between them. The discrepancy in Petitioner and Mr. Hays's version of events could be explained by the language barrier. Mr. Hays acknowledged the language barrier at Petitioner's rearraignment, stating: "So as I'm handicapped by the language, Your Honor– I've gone through four interpreters on this client, and I still feel there are some problems in the language area . . . ." (Criminal Docket No. 1:00-CR-145, Court File No. 135, July 9, 2001 Rearraignment Transcript at 4). Thus, both Petitioner and his counsel may have misunderstood their discussions on the direct

7

appeal issue.

The Government questioned Petitioner about the one other time he had been arrested in this country, but the Government did not submit evidence concerning the Petitioner's ability to speak or understand the English language during the relevant time periods as a result of time spent in the United States. The Government's questioning of Petitioner revealed some inconsistencies in his testimony concerning his § 2255 motion and the underlying criminal proceedings, but these inconsistencies could also be the result of language barriers. In contrast to Petitioner's testimony that he did not understand English and that Mr. Hays did not speak Spanish, the Government submitted no proof that Petitioner understood and/or communicated in English or that Mr. Hays spoke Spanish. There was no evidence submitted that Petitioner used the English language during the relevant time period to communicate with law enforcement, co-defendants, family, or others.

I find that Petitioner established that he believed Mr. Hays was filing a direct appeal at his request even though it is possible that Mr. Hays may have thought Petitioner had agreed not to proceed with an appeal. This conclusion is supported by Petitioner's testimony, Mr. Hays's statement at the rearraignment, and the representation that no fees were sought for interpreter services for any post-sentencing discussion of a direct appeal. Thus, I conclude Petitioner has satisfied the first *Strickland* requirement by showing his counsel's deficient representation fell below an objective standard of reasonableness.[4]

Because Mr. Hays's failure to adequately represent Petitioner denied Petitioner all assistance of counsel on appeal, prejudice is presumed to exist. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland v. Washington*, 466 U.S.

---

[4] In reaching this determination, the Court is in no way questioning Mr. Hays's professional competence.

668, 692 (1984). Cases where prejudice is presumed often involve a Petitioner who asked counsel to file a notice of appeal, but the lawyer failed to do so. *See, e.g., United States v. Leachman*, 309 F.3d 377, 380 n.4 (6th Cir. 2002); *Ludwig*, 162 F.3d at 458-59; *Rosinski v. United States*, 459 F.2d 59, 59 (6th Cir. 1972).

While a lawyer's failure to perfect a direct appeal requested by a criminal defendant violates the Sixth Amendment without regard to the probability of success on appeal, the criminal defendant's actual request for an appeal is a critical element in the Sixth Amendment analysis. *Ludwig*, 162 F.3d at 459. In this case, I find Petitioner has established that he requested an appeal, although the evidence does not establish that Mr. Hays understood that an appeal was still being requested in light of his advice that an appeal should not be filed. Petitioner exhibited a continuing desire to appeal by filing this § 2255 petition. Petitioner's actions suggest he would have prosecuted his appeal the first time if he were aware he needed to take action to do so. Thus, Petitioner's counsel gave ineffective assistance of counsel by failing to file a requested direct appeal, and therefore Petitioner is entitled to relief.

### III. CONCLUSION

I find that Petitioner received ineffective assistance of counsel on appeal when his lawyer failed to file a direct appeal. This conduct fell below an objective standard of reasonableness, and it denied Petitioner any assistance of counsel such that prejudice to Petitioner's defense is presumed. Therefore, I **RECOMMEND** that the Court **GRANT** the Petition as it relates to this issue.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE