UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JUAN JIMINEZ-SANTANA[1],           )
                                   )
            Petitioner,            )
                                   )          No. 1:03-CV-23/1:00-CR-145
v.                                 )
                                   )          Judge Curtis L. Collier
UNITED STATES OF AMERICA,          )
                                   )
            Respondent.            )

# M E M O R A N D U M

This matter comes before the Court on the motion of *pro se* petitioner Juan Jiminez-Santana

("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File

No. 1). Petitioner filed a memorandum in support of his petition (Court File No. 2) and, pursuant

to the Court's Order (Court File No. 3), the United States filed a response (Court File No. 4).

Petitioner also filed a motion for supplemental briefing in light of the United States Supreme Court's

decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) (Court File No. 10), and a motion to

expedite, reiterating his request for supplemental briefing regarding *Blakely* and the subsequently

decided cases *United States v. Booker,* 125 S. Ct. 738 (2005) and *United States v. Fanfan,* 125 S.Ct.

26 (2005) (Court File No. 11), which the Court also will address.

The Court referred a portion of Petitioner's motion to United States Magistrate Judge Susan

K. Lee pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) solely for a determination of the disputed

_____

[1]Although Petitioner spelled his name on his petition "Jimenez-Santana," it appeared during his criminal proceedings "Jiminez-Santana" is the correct spelling of his name (*see* Crim. Court File No. 98).

factual issues relating to Petitioner's claim of ineffective assistance of counsel due to his counsel's alleged failure to file a direct appeal (Court File No. 12). In accordance with Rule 72(b) of the Federal Rules of Civil Procedure, the magistrate judge filed a report and recommendation ("R&R") finding Petitioner has demonstrated he received ineffective assistance of counsel and recommending the portion of his § 2255 motion dealing with the issue of ineffective assistance of counsel due to failure to file a direct appeal be granted (Court File No. 21), which the Court then adopted (Court File No. 29). The Court also granted in part Petitioner's § 2255 motion, solely as to his claim of ineffective assistance of counsel for failure to file a direct appeal (*Id.*). This memorandum and the accompanying order address all of Petitioner's claims other than that resolved by the magistrate judge and the Court's Order (Court File No. 29).

The Court finds the materials thus submitted, together with the complete record of the underlying criminal case,[2] conclusively show Petitioner is not entitled to relief on the remaining claims. Accordingly, the Court will decide those matters without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), *cert. denied*, 508 U.S. 943, 113 S.Ct. 2423, 124 L. Ed. 2d 644 (1993), and will **DENY** the remaining claims in Petitioner's motion for the reasons stated herein.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

---

[2]In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion, which will be cited by the Court File Number assigned to the particular pleading or motion (*e.g.*, "Court File No. 1"), and all the files, records, transcripts, and correspondence relating to Petitioner's conviction in Criminal Docket No. 1:01-CR-61, which will be referred to by the Court File Number assigned to the particular matter in the underlying criminal case (*e.g.*, "Crim. Court File No. 1").

On November 2, 2000, as part of a law enforcement investigation into the distribution of large quantities of illegal drugs, a confidential informant ("CI"), Jamaal Flanagan, made a recorded telephone call to Petitioner to arrange for the delivery of a large quantity of methamphetamine and marijuana. The two met later that day, along with Petitioner's co-defendant, Eli Gonzalez, during which the CI ordered five pounds of marijuana and one pound of methamphetamine from them. On November 6, 2000, law enforcement agents surveilled Petitioner arriving at the location he and the CI had agreed the transaction would take place, and he was recorded telling the CI he would return later that afternoon with the methamphetamine. Law enforcement agents then further surveilled Petitioner driving to a residence, where the methamphetamine was delivered to him, and returning to the transaction location, where he placed a large plastic baggie containing an off-white substance, later confirmed to be 466.3 grams of a mixture and substance containing methamphetamine, on the table. Petitioner then was arrested (Presentence Report ("PSR") ¶¶ 15-19).

Petitioner later provided a statement to law enforcement agents indicating he rented the residence at which he had been observed, and also that the residence contained handguns and nineteen pounds of marijuana (*Id*. at ¶ 20). Agents secured a search warrant for the residence, and found, among other evidence of illegal drug activity, 8.422 kilograms of marijuana and two loaded guns (*Id*. at ¶ 22). Petitioner's codefendant Eli Gonzalez later was arrested after contacting the CI regarding Petitioner's whereabouts, and .39 grams of cocaine hydrochloride (powder cocaine) was found on his person (*Id*. at ¶ 23). The CI later told law enforcement agents he had purchased from Petitioner and/or his codefendant Eli Gonzalez 10 pounds of marijuana twice a week from January to July 2000 (approximately 480 pounds or 217,728 grams), 100-150 pounds of marijuana a week from July 2000 to the CI's arrest in October 2000 (approximately 1,200 pounds or 544,320 grams),

two pounds of methamphetamine (907.2 grams), and one kilogram of powder cocaine (*Id*. at ¶ 24). The CI characterized the relationship between Petitioner and his codefendant Eli Gonzalez as that of close associates in the distribution of illegal drugs (*Id*. at 25).

On July 9, 2001, Petitioner pleaded guilty without a written plea agreement to three counts of the superseding indictment charging him with (1) violation of 21 U.S.C. § 846, conspiring to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), knowingly, intentionally, and without authority distributing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; (2) violation of 21 U.S.C. § 846, conspiring to violate 21 U.S.C. §§ 841(a)(1), knowingly, intentionally, and without authority distributing marijuana, a Schedule I controlled substance; and (3) violation of 21 U.S.C. 841(a)(1) and (b)(1)(B), knowingly, intentionally, and without authority distributing in excess of 50 grams of a mixture and substance containing methamphetamine, a Schedule II controlled substance (*see* Crim. Court File No. 31, Superseding Indictment).

Before sentencing, Petitioner, through counsel, objected to the calculation of his sentence in the PSR, arguing it attributed drug quantities to him that were sold during periods he was not in this country, incorrectly applied USSG § 2D1.1(b)(1), which adds two levels for possession of a dangerous weapon in connection with a drug trafficking offense, and did not give him the benefit of the safety valve provision of 18 U.S.C. § 3553(f). Petitioner was represented by his appointed counsel, Harry K. Hays, at all stages of the proceedings and, since he was not proficient in English, also was provided with an interpreter at all stages of the proceedings. Petitioner did not appeal his conviction or sentence.

On January 10, 2003, Petitioner filed the present motion to vacate, set aside, or correct his

4

conviction pursuant to 28 U.S.C. § 2255. The Petition was timely filed within the statutory one-year limitation period. 28 U.S.C. § 2255(1).[3]

## II.  STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles,* 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States,* 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence

---

[3]28 U.S.C. § 2255, provides, in part:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

5

on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1721-22, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000), *cert. denied*, 531 U.S. 884, 121 S.Ct. 200, 148 L. Ed. 2d 140 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III.  DISCUSSION

### A.  Motions for Further Briefing and to Expedite

The Court first will address Petitioner's procedural motions (Court File Nos. 10, 11). The Court will **DENY** both of these motions for further briefing in light of recent Supreme Court decisions, because the United States Court of Appeals for the Sixth Circuit has held that none of these cases provides any relief to prisoners whose cases are on collateral review. *See Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005) (holding *"Booker* does not apply retroactively in collateral proceedings"). Further, since the Court is now evaluating Petitioner's claims, his motion "to expedite the process of his case and to issue its opinion with regard to his § 2255 motion" is moot and will be **DENIED** (Court File No. 11).

### B.  Petitioner's Motion Pursuant to 28 U.S.C. § 2255

6

Petitioner asserts essentially three grounds upon which he argues the Court should vacate, set aside, or correct his sentence. Petitioner contends (1) the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed.2d 435 (2000) requires he be resentenced; (2) the district court lacked subject matter jurisdiction over his case, for a variety of reasons; and (3) his counsel was ineffective (*see* Court File Nos. 1, 2).

With the exception of a claim of ineffective assistance of counsel, a defendant procedurally defaults a claim by failing to raise it on direct review. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L. Ed. 2d 828 (1998). Petitioner did not appeal his conviction or sentence and only his third claim contains any reference to alleged ineffective performance on the part of his attorney. A procedurally defaulted claim may only be raised in a § 2255 motion if the petitioner can first demonstrate either (1) "cause" to excuse his failure to raise the claim previously and actual "prejudice" resulting from the alleged violation, or (2) "actual innocence." *Id.* at 622, 118 S.Ct. at 1611; *Peveler v. United States*, 269 F.3d 693, 698-700 (6th Cir. 2001). Petitioner has not attempted to demonstrate his "actual innocence."

As a showing of cause to excuse his failure to raise any of his claims other than ineffective assistance of counsel in a direct appeal, Petitioner alleges he requested his counsel to file an appeal but the counsel failed to do so. The Government submitted in connection with its brief an affidavit of Petitioner's counsel, Mr. Hays. In this affidavit, Mr. Hays states Petitioner and he "discussed the possibility of filing a direct appeal. I advised Juan Jiminez-Santana not to appeal his conviction and sentence due to a lack of any legally viable issues and he was at the bottom of the guidelines. Juan Jiminez-Santana did not thereafter direct me to file an appeal with the Sixth Circuit Court of Appeals." (Exh. 1 to Court File No. 4, Affidavit of Harry K. Hays ("Hays Aff.")).

7

The Court, finding a dispute of fact between Petitioner and his former counsel, referred this issue to the magistrate judge, who held a hearing and issued an R&R finding Petitioner had demonstrated he received ineffective assistance of counsel and recommending the portion of his § 2255 motion dealing with the issue of ineffective assistance of counsel due to failure to file a direct appeal be granted (Court File No. 21), which the Court then adopted (Court File No. 29). In accordance with that decision, the Court finds Defendant has met the *Bousley* test by showing cause and prejudice and may raise the claims asserted in his § 2255 petition, even though they are procedurally defaulted. *See Bousley,* 523 U.S. at 621; *Peveler*, 269 F.3d at 698-700. The Court will address each claim in turn.

### 1.     *Apprendi* Violation in Sentencing

Petitioner first argues the Court violated *Apprendi* by sentencing him based on types of drugs, quantities thereof, and guns not specified in the original or superceding indictment (Court File No. 2 at 6). In *Apprendi*, the Supreme Court held "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 466. Petitioner argues the quantity and type of drugs are essential elements of the drug offense, and thus must be stated in the indictment and proven to the jury beyond a reasonable doubt (*see* Court File No. 2 at 8). However, Petitioner failed to notice a key phrase in the holding of *Apprendi*: it applies only where a fact "increases the penalty for a crime *beyond the prescribed statutory maximum*," not in any case where a fact increases the penalty within the statutory range. *Apprendi*, 530 U.S. at 490 (emphasis added); *see also United States v. Stines*, 313 F.3d 912, 916 (6th Cir. 2002) ("Because the district court limited the defendants' sentences to twenty years, and the statutory maximum penalty for an

unspecified quantity of any form of cocaine is twenty years. . . the *Apprendi* ruling is not triggered and does not impact the sentence. . .").

On Count One, violation of 21 U.S.C. § 846 by conspiracy to violate 21 U.S.C. § 841(a)(1) and (b)(1)(B) by distributing in excess of 50 grams of a mixture and substance containing methamphetamine, Petitioner received a sentence of 135 months (Crim. Court File No. 118 at 3). The statutory maximum on that count is 40 years, or 480 months. *See* 21 U.S.C. § 841 (b)(1)(B)(viii). On Count Two, violation of 21 U.S.C. § 846 by conspiracy to violate 21 U.S.C. § 841(a)(1) by distributing an unspecified amount of marijuana, Petitioner received a sentence of 60 months (Crim. Court File No. 118 at 3). The statutory maximum on that count is five years, or 60 months. *See* 21 U.S.C. § 841(b)(1)(D). On Count Three, violation of 21 U.S.C. 841(a)(1) and (b)(1)(B) by distributing in excess of 50 grams of a mixture and substance containing methamphetamine, Petitioner received a sentence of 135 months (Crim. Court File No. 118 at 3). The statutory maximum on that count is 40 years, or 480 months. *See* 21 U.S.C. § 841 (b)(1)(B)(viii). These sentences are being served concurrently, so Petitioner's total term of imprisonment will be 135 months.

Because none of his sentences exceeded the statutory maximums for the counts on which they were imposed, *Apprendi* does not apply in this case, and Petitioner's arguments on this point must fail. Any enhancements the Court applied during sentencing for types or quantities of drugs not charged in the superceding indictment, and the possession of a gun, did not violate *Apprendi* because they did not increase his sentence above the statutory maximums for the counts charged in

9

the superceding indictment.[4]  Accordingly, the Court will **DENY** Petitioner's request for relief on this ground.

### 2.    District Court Lacked Subject Matter Jurisdiction

Petitioner next makes an argument the Court lacked subject matter jurisdiction over the Government's prosecution of him.  First, Petitioner argues the charging instrument (superceding indictment) is fatally defective, because the Government made a motion to correct the spelling of Petitioner's last name, but the Government actually made substantive changes to this indictment, changing the dates of the offenses without the Grand Jury presenting the superceding indictment in open court as required by Fed. R. Crim. P. 6(f) and the Fifth Amendment (Court File No. 2 at 17-18).  However, the superceding indictment to which Petitioner plead guilty was properly amended and presented in open court (*see* Crim. Court File No. 31).  Petitioner's reference to the subsequent

---

[4] The Court would note that Petitioner's *Apprendi* argument he was incorrectly sentenced based on distribution of liquid (or injectable) methamphetamine, a Schedule II controlled substance, as opposed to non-liquid methamphetamine, a Schedule III controlled substance (*see* 21 U.S.C. § 812), has no merit, as he was charged with and pleaded guilty to Counts One and Three, which specified the substance he distributed was a Schedule II controlled substance (*see* Crim. Court File No. 31; Superceding Indictment, Crim. Court File No. 135, July 9, 2001 Rearraignment Transcript at 11-17).  Petitioner did not object to the type of methamphetamine with which he was charged during his rearraignment (*see id.*).  Additionally, the Court did not *enhance* Petitioner's sentence based on the type of methamphetamine involved, it merely sentenced him in accordance with the type of methamphetamine with which he was charged and to which he pleaded guilty, thus the *Apprendi* rule is not at issue.

Additionally, Petitioner's argument *Apprendi* was violated because the superceding indictment did not specify the exact quantity of drugs with which he was charged must fail. Petitioner was in fact charged in Counts One and Three using the quantity language of the statute, "in excess of 50 grams," and in Count Two using the language for any detectable amount of marijuana; such a charge does not violate *Apprendi*.  *See United States v. Zidell*, 323 F.3d 412, 429 (6th Cir. 2003).  Additionally, Petitioner was sentenced in accordance with the statute for those quantities of drugs, and received a sentence below the statutory maximum on all counts.  *See* Crim. Court File No. 31, Superceding Indictment; 21 U.S.C. § 841(b)(1)(B) and (b)(1)(D).  Therefore, *Apprendi* was not violated.

motion to amend that superceding indictment to correct the misspelling of his name (Crim. Court File No. 98) never was granted, thus the superceding indictment was not improperly broadened pursuant to that motion, and was not defective.

Petitioner second argues the indictment is fatally defective because it failed to state essential elements of the charged offense, such as the exact quantity and specific types of drugs involved (Court File No. 2 at 19-21). While such a failure would render an indictment defective, *see Hamling v. United State*s, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L. Ed.2d 590 (1974) (". . . an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"), the Court need not address this argument because the indictment did in fact include the essential elements of the offenses with which he was charged, including the statutorily required amount and type of drugs, giving Petitioner fair notice of the offenses with which he was charged.

Third, Petitioner argues the superceding indictment did not "state the jurisdiction element and the government has failed to present proof of jurisdiction on the record" (Court File No. 2 at 21). Petitioner then proceeds to cite several cases requiring administrative agencies to put into their records proof of jurisdiction (*see id.*). A district court is not an administrative agency, thus those cases are not relevant to its proceedings. Petitioner also cites several rather old cases from the Supreme Court of California, requiring lower courts to affirmatively state their jurisdiction, and *Louisville RR v. Motley*, 211 U.S. 149 (1908), which discusses federal court jurisdiction (*see id.*). None of these cases compel the conclusion to which Petitioner comes. This Court had jurisdiction over Petitioner's case because it arose under the laws of the United States, and was not required to

state this jurisdiction on the record. *See* U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1331.

Petitioner fourth makes an argument based on a treatise on jurisdiction over federal areas within the states (Court File No. 2 at 23-25). The Court cannot imagine how this would be pertinent in this case, which did not involve jurisdiction based on actions on federal lands. Additionally, Petitioner cites cases dealing with, variously, conflicts in jurisdiction between federal district courts in Kansas and federal district courts in the Territory of Oklahoma in 1894, whether United States laws extend to acts done in foreign countries, and other irrelevant matters (*see id.*). Because this argument verges on the unintelligble, it does not persuade the Court it lacked subject matter jurisdiction over the charges against Petitioner. The district court had jurisdiction over the case because it arose under the laws of the United States. *See* U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1331.

Fifth, Petitioner asserts the law under which he was charged, the Controlled Substances Act of 1970, has been repealed, therefore it is "nonexistent" and the Court did not have subject matter jurisdiction over his case (Court File No. 2 at 25-28). Petitioner points to the codification notes in the *Federal Criminal Code and Rules* (West 2001), which indicate when and how statutes have been amended. In the notes following 21 U.S.C. § 841, the deletion or repeal of certain portions of this statute is noted, but Petitioner's conclusion this indicates the entire statute was repealed is simply incorrect. The statute remains in force despite amendment or repeal of certain sections, and has ben upheld as constitutional in more than one instance. *See, e.g., United States v. Martinez*, 253 F.3d 251, 256 n.6 (6th Cir. 2001).

Petitioner asserts in his sixth argument the statute under which he was charged, the Controlled Substances Act of 1970, is merely a statement of public policy, not a valid law, because

12

Congress did not include an "enacting clause" (stating "Be it enacted by Congress"), or a "resolving clause" (presumably stating "Be it resolved by Congress"), thus the statute is not meant to have the force of law (Court File No. 2 at 28-31). Petitioner has not cited to and the Court was unable to find any support for the requirements Petitioner imposes on Congress in order for a statute to have the force of law.

Finally, Petitioner argues the statute under which he was charged, the Controlled Substances Act of 1970, was not published in the Federal Register and did not comply with other requirements for regulations, thus it never took effect (Court File No. 2 at 31- 35). Petitioner has confused a law that requires federal regulations promulgated by federal agencies to be published and made available for public comment in the Federal Register, 44 U.S.C. § 1510, with a requirement that every law passed by Congress must be published in the Federal Register in order to gain effect and general applicability. No such requirement exists; once a bill has been passed by both houses of Congress and signed by the President, or the President's veto is overridden, it is law as of its effective date. *See* U.S. CONST. art. 1, § 7, cl. 2. Because the statutes under which Petitioner was charged were in fact properly enacted and took effect, the district court had federal question subject matter jurisdiction over his case. *See* U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1331.

### 3.     Ineffective Assistance of Counsel

Petitioner next argues his defense counsel was ineffective, such that his Sixth Amendment right to effective assistance of counsel was violated. The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466

13

U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court set

forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense. This requires showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction . . . resulted from a breakdown
> in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064. As with any other claim under § 2255, the burden of proving

ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073,

1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S.

at 688, 104 S.Ct. at 2065. A defendant asserting a claim of ineffective assistance of counsel must

"identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." *Id*. at 690, 104 S.Ct. at 2066. The evaluation of the objective

reasonableness of counsel's performance must be made "from counsel's perspective at the time of

the alleged error and in light of all the circumstances, and the standard of review is highly

deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L. Ed. 2d 305

(1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient

performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had

no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. The petitioner must

14

show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id*. at 697, 104 S.Ct. at 2069.

Challenges to guilty pleas based upon ineffective assistance of counsel are governed by this same two-part *Strickland* test. *See Hill v. Lockhart*, 474 U.S. 52, 57-59, 106 S.Ct. 366, 370-71, 88 L. Ed. 2d 203 (1985). Thus, Petitioner must demonstrate counsel's performance fell below an objective standard of reasonableness and there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different (*i.e.*, he would not have pleaded guilty). *Id.* at 58-59, 106 S.Ct. at 370; *see also Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002).

First, Petitioner argues Mr. Hays was ineffective because he "failed to challenge the indictment which was fatally defective" (Court File No. 2 at 38). As analyzed *supra*, the indictment was not "fatally defective." Thus, Petitioner's attorney was not objectively unreasonable in failing to challenge the indictment on that ground. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

15

Second, Petitioner states Mr. Hays was ineffective in failing "to object to the indictment for failure to set forth the element of jurisdiction," which he argues the Court did not have because the statutes under which he was charged were repealed (Court File No. 2 at 38-39). The basis for this argument also was addressed *supra*; these statutes were not repealed, and the Court had jurisdiction over this case. Accordingly, Petitioner's attorney was not objectively unreasonable in failing to object to the indictment on that ground. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Petitioner third argues his Mr. Hays' failure to "note, object, or argue that the superseding indictment (to which the defendant pled guilty) was broadened and the dates were altered; the frame of time was broadened" violated his right to effective assistance of counsel, because this broadening violated the Fifth Amendment Grand Jury clause (Court File No. 2 at 39). This argument was addressed *supra*, and the Court found no violation of the Grand Jury clause in the superseding indictment, so Petitioner's attorney was not objectively unreasonable in failing to object to the superseding indictment on that ground. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Fourth, Petitioner states Mr. Hays was ineffective in failing "to make a timely and valid preservation of defendant's rights (constitutional, inalienable, civil, and all other rights of which the defendant may not be aware)" (Court File No. 2 at 39). Because Defendant did not specify which of his rights his counsel specifically failed to preserve, the Court cannot state with any certainty that he was objectively unreasonable in doing so. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Fifth, Petitioner argues Mr. Hays "failed to advise Movant with regard to the difference

between powder methamphetamine and liquid methamphetamine and the difference in penalty." Petitioner pled guilty to two charges involving in excess of 50 grams of a mixture and substance containing methamphetamine, a Schedule II controlled substance (Crim. Court File No. 135, July 9, 2001 Rearraignment Transcript at 11-17). Petitioner does not now claim that he was only involved with Schedule III methamphetamine, not injectable Schedule II methamphetamine, and he also does not state he would not have pled guilty to the charges if he had understood the difference between these two types of drugs. Therefore, he has not shown his counsel was ineffective in failing to explain to him the difference between these drugs. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Petitioner's sixth argument, that Mr. Hays failed to explain how the sentencing guidelines would apply to his case, must fail for two reasons (Court File No. 2 at 39). In addition to the fact that Petitioner does not state he would not have pled guilty if Mr. Hays had explained the guidelines more completely, Petitioner waived this argument when he stated, under oath during his rearraignment, he had talked about how the sentencing guidelines would apply in his case and understood they would affect the Court's decision in sentencing him (*see* Crim. Court File No. 135, July 9, 2001 Rearraignment Transcript, at 18). Therefore, he has not shown his counsel was ineffective in failing to explain the sentencing guidelines to him *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

In his seventh argument, Petitioner returns to his faulty contention the *Apprendi* decision applies to his case, and alleges Mr. Hays was faulty in failing to "file any type of motion, even though this case was pending after the Supreme Court's ruling in *Apprendi*" (Court File No. 2 at 39). As the Court stated supra, *Apprendi* does not apply to this case, so Petitioner's counsel was not

17

objectively unreasonable in not filing a motion based on an *Apprendi* violation. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Petitioner's final arguments are merely a laundry list of complaints, listed without any specifics that would allow the Court to evaluate whether his counsel actually was deficient. Petitioner alleges Mr. Hays

> failed to exercise professional judgment on behalf of his client, failed to search the applicable laws and case law, showed ignorance of the elements of the crime, rushed into the plea without investigation, and gave the defendant erroneous advice in order to induce acceptance of the plea agreement;[5] counsel lacked devotion to the interest of his client; counsel was willing to accept the government's version of the facts of the case

(Court File No. 2 at 40). A petitioner under § 2255 must set forth specific facts entitling him to relief; "[c]onclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). Because the Court cannot find Petitioner's constitutional rights were violated merely on the basis of a bald assertion, and Petitioner has not given even a single specific fact that would indicate these allegations took place, the Court must hold Petitioner's counsel was not objectively unreasonable in the above failures. *See Hill,* 474 U.S. at 58-59, 106 S.Ct. at 370; *see also Miller,* 299 F.3d at 578.

Petitioner has not supported any of his claims his counsel was ineffective by showing Mr. Hays fell below an objective standard of reasonableness and Petitioner would not have plead guilty if his counsel had been effective. Accordingly, the Court will **DENY** Petitioner's claims for relief on this ground.

However, as analyzed in the magistrate judge's R&R which the Court adopted, Petitioner

---

[5]The Court notes Petitioner pleaded guilty without a plea agreement (See generally Court File No. 135, July 9, 2001 Rearraignment Transcript).

has stated a claim of ineffective assistance of counsel for his attorney's failure to file a direct appeal after he asked him to do so, leading the Court to grant this portion of Petitioner's motion and award Petitioner the remedy of an out-of-time appeal in its previous Order (Court File Nos. 21, 29).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED IN PART,** except as to that portion the Court granted in its previous Order adopting the magistrate judge's R&R (Court File No. 29).

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.[6] Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893, 103

---

[6]The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions. *Hereford v. United States*, 117 F.3d 949, 951 (6th Cir. 1997); *cf. McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases). Rather, to seek leave to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the $105 filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must seek permission from the district court under Rule 24(a) of the Federal Rules of Appellate Procedure. *Hereford*, 117 F.3d at 952. If the motion is denied, the prisoner may renew the motion in the appellate court.

S.Ct. 3383, 3394, 77 L. Ed. 2d 1090 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893, 103 S.Ct. at 3394. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846, 78 S.Ct. 71, 2 L. Ed. 2d 56 (1957)).

In this case, Petitioner's remaining claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore **DENIES** a certificate of appealability.

Fed. R. App. P. 24(a) further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Fed. R.App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F. Supp. 2d 769 (W.D. Tenn. 2001). No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

An Order shall enter.

_____ **/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

21